George E. PESSOTTI, Plaintiff, Appellant,

v.

EAGLE MANUFACTURING COMPANY, Defendant, Appellee.

George E. PESSOTTI, Plaintiff, Appellee,

v.

EAGLE MANUFACTURING COMPANY, Defendant, Appellant.

Nos. 90–2182, 90–2183.

United States Court of Appeals, First Circuit.

Heard Sept. 3, 1991.

Decided Oct. 18, 1991.

Michael Avery, Boston, Mass., for plaintiff, appellant George E. Pessotti.

John J. McGivney with whom Thomas D. Burns and Burns & Levinson, Boston, Mass., were on brief for defendant, appellee Eagle Mfg. Co.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

■ Under the doctrine of relation back, an amended complaint can be treated, for purposes of the statute of limitations, as having been filed on the date of the original complaint. This diversity case presents several questions concerning choice of federal or state relation back law, the result dictated by that law, and the procedural mechanisms by which relation back questions may be raised and ruled upon.

## I

On May 12, 1979, appellant George Pessotti suffered severe burns when gasoline fumes were ignited by the pilot light on his kitchen stove. Pessotti had been using gasoline as a solvent in order to remove his kitchen carpet, which was glued to the linoleum floor. On July 29, 1980, Pessotti filed a complaint in the District Court for the District of Massachusetts against Magic Chef, Inc., the manufacturer of the stove. Asserting that jurisdiction existed because of diversity of citizenship, Pessotti alleged that his injuries had been caused by Magic Chef's failure to warn him of the hazards of the stove's continuously burning pilot light.

At a trial, which took place ten years later in the summer of 1990, Pessotti testified to having believed at the time he filed his complaint against Magic Chef that the manufacturer of the gasoline can was also responsible for his injuries. However, he said he had been unable to identify the manufacturer of the can until four years after filing suit, when, in late 1984, his expert discovered a roll of undeveloped photographic negatives in the files of the Westford, Massachusetts police department. This was apparently the first time anyone working on behalf of Pessotti had checked the police files, even though two police officers had investigated at the scene on the day of the accident. After developing the photographs, Pessotti determined that the can in which he had brought the gasoline into his kitchen had been manufactured by appellee Eagle Manufacturing Company. On January 11, 1985, Pessotti moved to amend his complaint to add Eagle as a defendant. The motion was allowed, and Pessotti filed an amended complaint on February 12, 1985 and a corrected amended complaint on November 26, 1986. The amended complaints alleged that Eagle's failure to warn him of the hazards of using gasoline near hidden ignition sources constituted negligence, breach of warranty and unfair or deceptive trade practices, in violation of Massachusetts common and statutory law.

The statute of limitations had expired in 1982 as to the negligence and warranty claims against Eagle, and in 1983 as to the unfair trade practice claim. When Pessotti moved successfully to amend his complaint so as to add Eagle as a defendant, and when the amended complaints were filed, the crucial question of whether or not the claims against Eagle would relate back to

the date of the original complaint was left undecided. Nor did the court then consider whether Massachusetts or federal law should control that determination. The plaintiff raised these issues in a memorandum of law submitted in support of the amendment, but, as Eagle was not then a party, the amendment was allowed unopposed. Much later, during the trial proceedings in 1990, the district court commented that, pursuant to its normal practice under the Federal Rules of Civil Procedure, it had allowed the complaint to be amended subject to a later determination of whether it would relate back.

In its answer to Pessotti's corrected amended complaint, Eagle pleaded that Pessotti's claim was "barred by the applicable statutes of limitation and/or the doctrine of laches." Eagle did not, however, move for judgment on this ground until after the trial commenced. During the interim, in January 1988, Pessotti settled with Magic Chef for $15,000, leaving Eagle as the sole defendant. A jury trial on Pessotti's claims against Eagle was held in late July and early August 1990. At the close of plaintiff's case, Eagle moved for a directed verdict on the grounds of limitations and laches, as well as of the insufficiency of the evidence and other grounds related to the merits of the action. A hearing was held at which the only limitations issue discussed was whether the amended complaint related back under either Massachusetts or federal law. The motion was denied, and the jury returned a verdict for the plaintiff. Judgment on the verdict was entered on August 9, 1990. On the day following, Eagle filed a motion for judgment notwithstanding the verdict asserting grounds the same as those in its earlier motion for a directed verdict.

Regarding the alleged insufficiency of the evidence and other questions pertaining to the jury verdict, Eagle's motion was denied. 774 F.Supp. 669. The district court ruled that Eagle's motion had raised "close and debatable issues," but that "the evidence [was] barely sufficient to present a jury question." On the relation back issue, however, the court held for Eagle.

It ruled that relation back was governed by Rule 15(c) of the Federal Rules of Civil Procedure, which clearly indicates that the amended complaint did *not* relate back to the date of filing of the original complaint. In the alternative, the court held that the same result would obtain under Massachusetts law. The district court also rejected Pessotti's arguments that it was precluded from ruling on the relation back question because the matter had been presented for the first time in a motion for judgment notwithstanding the verdict several years after the court had allowed the complaint to be amended so as to bring in Eagle.

Pessotti presents several arguments on appeal. He challenges the timing and procedure of the court's relation back ruling, arguing that the district court could not consider that question when it did because (i) if Massachusetts law controls, relation back was automatic once the amendment was allowed, (ii) judgment notwithstanding the verdict may only be granted on the merits of an action, not on a limitations defense, and (iii) Eagle was barred by waiver and estoppel from raising its limitations defense several years into the litigation. On the relation back question itself, Pessotti argues that Massachusetts law governs and causes his claim against Eagle to relate back to the time he sued Magic Chef. Eagle cross appeals, arguing that the district court erred in denying its motion on insufficiency of evidence and other merits grounds.

We uphold the district court's determination that Pessotti's claim against Eagle did not relate back and was, therefore, barred by the statute of limitations. In our view, the fact the court at first allowed the complaint to be amended so as to join Eagle as a defendant—ruling against plaintiff on relation back and limitations grounds only much later, when granting defendant's motion for judgment notwithstanding the verdict—was not procedurally fatal. We also think that the court's substantive disposition of the relation back question was correct under both Massachusetts and federal law. We need not, therefore, consider the choice of law question nor do we reach the legal sufficiency of plaintiff's case.

## II

### A. *Procedure and Timing Issues*

We first consider Pessotti's arguments concerning the timing and mechanics of the district court's relation back decision.

Pessotti contends that Eagle forfeited its statute of limitations defense (including any right to object to the relation back of Pessotti's claim) by failing promptly to contest the court's order allowing the complaint to be amended. Pessotti's argument rests on the twin assumptions that Massachusetts law controls the relation back issue, and that the district court was bound by a particular aspect of the Massachusetts relation back rule, to wit, that an amended complaint automatically relates back to the filing date of the original complaint.[1] Under Pessotti's theory, Eagle could not simply rely on its answer to the amended complaint to raise and preserve its statute of limitations defense. Rather, Eagle had to timely move the court to reconsider its order amending the complaint to include the new claim against Eagle. As this was not done, Pessotti argues, the amendment stood, and, under Massachusetts requirements, it automatically related back. Subsequent arguments about whether or not it related back were simply meaningless, since under Massachusetts law, amendments once allowed, *always* relate back, as a matter of black-letter law.

Pessotti's argument only works, of course, if Massachusetts relation back law applies. If federal relation back law applies, the mere fact a court allowed an amendment to the complaint would not determine whether the amended complaint related back.[2] Under federal law it is clear that the question whether Pessotti's claim against Eagle related back remained open for later adjudication as a separate and distinct matter.

But even if Massachusetts relation back law is controlling here, we do not agree with Pessotti's position that the court's allowance of the amendment was a procedural event that permanently resolved the question of relation back. The district court, in its subsequent consideration of the relation back issue, commented that it had allowed the amended complaint, pursuant to the Federal Rules of Civil Procedure,

> subject to later determination of the consequences of my allowance of the amendment. Surely, whether a federal court allows an amendment with a view to later determining its effect (given then unsettled questions of law), rather than considering all of the potential consequences of a proposed amendment before deciding whether to allow the motion to amend, it is a matter of procedural law on which a United States district court may apply federal rather than Massachusetts law. Accordingly, I rule that under federal law it is appropriate for me now to declare explicitly that my procedural order was not meant to decide, and did not have the effect of deciding, the unsettled question as to whether the amendment would relate back to the time of filing of the original complaint. My present ruling has the same legal effect as vacating my order of January 1985 [allowing the amended complaint], and if it is necessary to characterize it in this way in order to achieve the intended effect consistently with Massachusetts law, I hereby do so.

We think the district court analyzed the question properly. Even assuming, arguendo, that choice of law principles were later found to require application of Massachusetts substantive rules concerning relation back, the district court's procedural matrix rests on federal law—and federal law treats amendment and relation back as

---

**1.** "Any amendment allowed pursuant to this section or pursuant to the Massachusetts Rules of Civil Procedure shall relate to the original proceedings." Mass.Gen.L. ch. 231, § 51.

**2.** Federal Rule of Civil Procedure 15(a) sets forth the conditions under which a party may amend his complaint without mentioning whether an amendment relates back. Rule 15(c) then provides the limited conditions under which an amended complaint will relate back. (It is undisputed those conditions were not met here.) Thus, unlike in Massachusetts, the mere allowance of an amendment does not resolve the relation back issue favorably to the amending party.

raising separate issues. When and in what procedural setting a court rules on a particular question is normally a "procedural" issue controlled by a forum's own law. Under "outcome determinative" principles, we doubt that a party would select a forum in these circumstances simply on the basis of whether a substantive relation back rule would be resolved at the time of amendment or later. *See Hanna v. Plumer*, 380 U.S. 460, 468–69, 85 S.Ct. 1136, 1142, 14 L.Ed.2d 8 (1965). Indeed, the cart would be put before the horse if, in order merely to determine when and in what setting it would resolve a relation back issue, a court had, first, to decide one of the grounds underlying the latter issue, i.e., choice of law. Rather we think the court should consult its own law in order to ascertain procedural ground rules of this sort.

■ Hence, here, the district court properly treated relation back as a separate question, in conformity with the scheme of the federal rules. At the time it allowed the amended complaint, it had no practical way of knowing whether federal or Massachusetts (or some other) law would ultimately control, and it had no intention of resolving relation back merely by allowing the amendment. Eagle timely raised the statute of limitations bar in its answer, and both parties and the court thereafter accepted that Eagle had objected to the allowance of the amended complaint on relation back grounds. Although he made related arguments concerning waiver and estoppel, Pessotti never argued in the district court that no proper objection had been raised.[3] At hearings held on both the directed verdict and judgment notwithstanding the verdict motions, the parties argued extensively about both federal and Massachusetts law concerning relation back. Fully aware of the procedural distinction between Massachusetts and federal relation back law, and of the guiding substantive rules in both jurisdictions, the court then ruled in favor of Eagle. It would make no sense to hold that this ruling, rendered after full argument by both sides, was a nullity because no objection fully satisfying Massachusetts procedures had been raised at the time the complaint was amended.

■ Pessotti next argues that it was error for the district court to, in effect, vacate its earlier order allowing the amended complaint by granting a judgment notwithstanding the verdict. Pessotti claims that a motion for judgment notwithstanding the verdict is an improper vehicle for presenting a limitations related defense because such a judgment may be granted only where the evidence does not support the verdict on the merits. To support this proposition, Pessotti points to authorities stating that a judgment notwithstanding the verdict should be granted where no reasonable construction of the evidence could support the verdict. *E.g., Conway v. Electro Switch Corp.*, 825 F.2d 593, 598 (1st Cir.1987). However, we read these authorities as stating only the standard for deciding a sufficiency of the evidence claim when such claim is presented in a motion for judgment notwithstanding the verdict, not as limiting the issues which can be presented via such a motion. Federal Rule of Civil Procedure 50(b) does not on its face limit the legal questions which may be raised, and we see no reason why a limitations defense may not be presented in a motion for judgment notwithstanding the verdict. *See Borden v. Paul Revere Life Insurance Co.*, 935 F.2d 370, 376 (1st Cir. 1991) (affirming a district court's rejection of a limitations defense presented in a motion for directed verdict and ruled upon

**3.** In a memorandum submitted to the district court in opposition to the judgment notwithstanding the verdict, Pessotti argued that Eagle should have objected to the amended complaint soon after it was brought into the case in order to allow Pessotti to present evidence concerning lack of prejudice to Eagle. He also argued that Eagle was estopped to raise the issue, and that the allowance of the amended complaint was a

discretionary ruling that could not be altered after judgment. In addition to rejecting these arguments, the district court ruled, sua sponte, that federal procedural law permitted it to reconsider its earlier ruling. However, the specific argument that no proper objection had been raised because Massachusetts law provides that an amended complaint automatically relates back was not presented to the district court.

after judgment, without noting any procedural problem).

■ Pessotti also argues that Eagle should have moved for judgment sooner in the proceedings, rather than waiting several years to do so. To the extent that this argument is based on the doctrine of waiver, we reject it. Eagle's assertion of a limitations defense in its answer made clear its intent to raise that defense. We need not decide whether it would be proper for a *district court*, in appropriate circumstances, to avoid wasted effort by requiring that a defense raised in a responsive pleading be argued and ruled upon before trial. Such a decision concerns the efficient management of the litigation and is properly left to the discretion of the district court. Here, the district court determined that it was appropriate to consider the defense at the end of trial proceedings. In the circumstances, we do not find any abuse of its discretion.

■ Finally, we also reject Pessotti's related argument that, because of Eagle's failure to move for judgment on limitations grounds early in the proceedings, Eagle was estopped to raise its limitations defense at the time it did. Pessotti claims that Eagle's failure to assert its limitations defense earlier led him to believe that it would not do so, and that he relied to his detriment on this belief by settling with Magic Chef for a small amount, assuming that he could obtain a "meaningful recovery" against Eagle. Estoppel requires "reasonable reliance." *Phelps v. Federal Emergency Management Agency*, 785 F.2d 13, 16 (1st Cir.1986). We simply do not think it would have been reasonable, absent some express representation by Eagle, for Pessotti to assume that Eagle would not pursue a defense it had pleaded.[4] Furthermore, the merits of Pessotti's claim were vigorously disputed by Eagle. Therefore, even assuming that it was reasonable for Pessotti to believe that Eagle would not pursue its limitations defense, it would still have been unreasonable for Pessotti, in deciding whether to settle with Magic Chef, to assume he could recover a significant amount from Eagle.[5]

## B. *Relation Back*

■ We have held above, notwithstanding structural differences between Massa-

---

**4.** Pessotti also argues that Eagle's answer only asserted a limitations defense without noting the relation back issue or challenging the allowance of the amended complaint. We think it would have been unreasonable for Pessotti to assume that Eagle would not pursue its limitations defense because it did not immediately raise all the underlying arguments necessary to support that defense.

**5.** While they do not merit extended discussion, we reject several additional arguments of Pessotti. First, it was not error to grant the judgment notwithstanding the verdict on relation back grounds because judgment had already been entered on the jury verdict. Pessotti argues that this would interfere with the finality of judgments or appear to have been motivated by a disagreement with the jury verdict on the merits. This argument ignores that the district court expressed grave doubts on the relation back question at the hearing on Eagle's motion for a directed verdict, but decided to submit the case to the jury because a jury verdict for Eagle would moot the question. This is a common and well accepted practice, which did not constitute error. Second, we must reject Pessotti's argument that the decision to amend the complaint was, under Massachusetts law, a procedural decision which could not be changed after

judgment. In addition to ignoring the district court's reason for submitting the case to the jury, this argument ignores the fact that the court, unsure whether Massachusetts or federal law would apply, had only allowed the original complaint subject to a later determination as to whether the complaint would relate back. Third, we think that the issues presented in Eagle's motion for judgment notwithstanding the verdict were preserved by its motion for a directed verdict. Although Eagle's motion for a directed verdict stated only that Pessotti's complaint was "barred by laches and/or the applicable statute of limitations" (among other merits related grounds), at a hearing on the motion the parties argued extensively about Massachusetts law concerning the amendment of complaints. Thus we reject Pessotti's argument that the issue ruled upon by the court in the judgment notwithstanding the verdict had not been presented in Eagle's motion for a directed verdict. Finally, we reject Pessotti's argument that the district court should have imposed an abuse of discretion standard on itself in vacating its earlier order. If any ruling by the district court was entitled to deference by the district court itself, it was the judgment notwithstanding the verdict which, unlike the allowance of the amended complaint, was made after full briefing and argument.

chusetts and federal relation back practice, that there was no error in the timing and procedure followed in making the relation back decision under the law of either jurisdiction. We next consider whether the district court erred substantively in deciding that the amended claim against Eagle did not relate back. We think not. It is not disputed that under Federal Rules of Civil Procedure 15(c) Pessotti's amended complaint would not relate back. Because we find that the identical result obtains under Massachusetts law, we need not decide which law applied.[6]

In 1988 the Massachusetts legislature enacted St.1988 c. 141, § 1, which allowed amendment of a complaint if the party requesting amendment sought "recovery for the injury for which the action was intended to be brought." 1988 Mass.Acts c. 141 § 1, codified at Mass.Gen.L. ch. 231, § 51. The legislature further provided that the act was to apply to all actions pending as of July 14, 1988. 1988 Mass.Acts c. 141, § 2. This case would, therefore, be governed by that statute, which permits the amendment of a complaint to bring in a new party under a new theory of liability. As already noted, if an amended complaint is allowed, it automatically relates back. Mass.Gen.L. ch. 231, § 51.

Because relation back is automatic upon the allowance of an amended complaint, the factors which would counsel against relation back must be considered by the trial court in deciding whether to allow the amendment. Thus, the Massachusetts Supreme Judicial Court has stated:

[t]he decision whether to allow a motion to amend a pleading is a discretionary decision and depends upon a judge's weighing of several factors. Factors to be considered in making such a decision

include undue delay by the moving party, imminence of trial, and undue prejudice to the opposing party. [citations omitted].

*Barbosa v. Hopper Feeds, Inc.*, 404 Mass. 610, 621–22, 537 N.E.2d 99, 106 (1989). Subsequent Massachusetts cases appear to provide that "undue delay" alone is a sufficient reason to deny the amendment of a complaint, and that an explicit showing of some other factor such as prejudice is not required. The Supreme Judicial Court recently held that "unexcused delay in seeking to amend is a valid basis for denial of a motion to amend." *Mathis v. Massachusetts Electric Co.*, 409 Mass. 256, 265, 565 N.E.2d 1180, 1185 (1991). Furthermore, the Massachusetts Appeals Court has held that "[t]he policies which support the extinguishment of claims after limitations periods speak against allowing such amendments against new defendants." *Christopher v. Duffy*, 28 Mass.App. 780, 785, 556 N.E.2d 121, 124 (1990). One of the policies of a statute of limitations is that a bright line cutoff is needed because one can never be sure whether or not the passage of time has prejudiced a defendant. This policy would, of course, counsel against requiring an explicit showing of prejudice. Nevertheless, because Massachusetts law on this question is not completely settled, we shall assume for present purposes that prejudice as well as undue delay is required before a court may deny an amendment under these circumstances. *See id.* at 784, 556 N.E.2d at 123 ("We need not consider whether undue delay in seeking amendment can on occasion be itself sufficient to warrant a court's denying the leave").

The district court expressly found that Eagle "was prejudiced by undue delay." As a combination of prejudice and undue delay is sufficient reason under Massachu-

---

**6.** The choice of law question does not present an important or unsettled question of law, requiring resolution on that ground. In *Marshall v. Mulrenin*, 508 F.2d 39 (1st Cir.1974), this circuit held that Massachusetts law governed under very similar circumstances. Eagle now argues that *Marshall* has been overruled by *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986). A proposed amendment to the Federal Rules of Civil Procedure— which, absent Congressional action to the contrary, will take effect December 1, 1991—will

explicitly provide that *Marshall* remains good law. *See* Proposed Amendment to Fed.R.Civ.P. 15(c) advisory committee's note, printed in *Federal Civil Judicial Procedure and Rules* (West 1991) ("[if *Schiavone* ] implies the contrary [of *Marshall* ], this paragraph is intended to make a material change in the rule"). Since the issue will be resolved by the amended rule, there is no need for this court to decide whether *Marshall* remained good law in the interim between *Schiavone* and the effective date of the amendment.

setts law for a court to refuse to allow an amendment, the district court's decision may be overturned here only if this finding is clearly erroneous. *Cf. Robertson v. Gaston Snow & Ely Bartlett,* 404 Mass. 515, 525, 536 N.E.2d 344, 350 (1989) (standard of review of findings of fact in bench trial is clear error). The district court's finding of undue delay is supported by the record. Pessotti testified at trial that, at the time he sued Magic Chef, he believed the manufacturer of the can, as well as Magic Chef, was responsible for his injuries. However, he said he could not determine the manufacturer of the can because it had been thrown away on the day of the accident, and only when his expert discovered the negatives did he determine that Eagle had manufactured the can. The district court found that "with just a bit more diligence, plaintiff and others acting on his behalf would have discovered the crucial photographs long before the limitation period expired." The police report, prepared on May 12, 1979, stated that "Off[icer] Chandonait arrived and took photos. He also took possession of the can...." Pessotti's neighbor, John Resnik, testified at trial that he had seen a police officer come out of Pessotti's home carrying a gasoline can with a picture of an Eagle on the side. Given that the manufacturer's identity could have been, and ultimately was, determined from the police report, and Pessotti's neighbor recalled that the police had been on the scene and removed the can, we think the record supports the district court's conclusion that Pessotti's delay in naming Eagle was undue.[7]

The district court's finding of prejudice is likewise supported by the record. Pessotti argues that this finding was error because

the only contested issue in the case concerned the adequacy of the warnings on the can, which did not depend on prompt investigation or fresh memories. Even though the trial centered on the adequacy of the warnings, however, there was significant evidence which did in fact depend on witnesses' memories. Westford Police Sergeant David Hogg testified that an ambulance attendant had told him that Pessotti, immediately after the accident, said the fumes must have been ignited by the pilot light.[8] This evidence tended to show that Pessotti knew his stove's pilot light was on at the time of the accident, so that a warning on the gasoline can concerning the hazards of continuously burning pilot lights would have been superfluous. However, in subsequent testimony, Hogg stated that, after giving his original testimony, he had questioned its accuracy. He had then called the ambulance driver to discuss their conversation on the day of the accident, and noted his concerns to Pessotti's lawyer and the court. As a result, Hogg was recalled and testified that it was he, not Pessotti, who had speculated that the fumes had been ignited by the pilot light. Sergeant Hogg's changed testimony clearly damaged Eagle's case. We cannot know what Sergeant Hogg would have said if the case had been tried earlier, but we think that, given the inconsistencies in this important testimony, presented eleven years after the incident, the district court did not clearly err in finding that Eagle had been prejudiced by Pessotti's four year delay in bringing it into the case.[9]

### Conclusion

Under Massachusetts law, the district court's decision that the amended com-

---

7. This conclusion is not altered by the jury's answer of "no" to the question "[d]o you find that the plaintiff failed to provide defendant with reasonably timely notice of his claim?" This question was presented to the jury on a verdict form because Pessotti's warranty claim under Massachusetts law required such notice. *See* Mass.Gen.L. ch. 106, § 2–607(3)(a). We need not decide whether the questions of "reasonably timely notice" for purposes of the warranty claim and "undue delay" for purposes of allowing the amended complaint are the same. The decision whether to allow the amended complaint was a discretionary decision to be

made by the court. The court's findings of fact in support of that decision are not altered by an allegedly inconsistent jury finding rendered for another purpose.

8. The court overruled a hearsay objection to this evidence on grounds not relevant here.

9. We do not think it is necessary to resolve the parties' arguments over whether the problem with Sergeant Hogg's testimony would have been prevented had Eagle deposed him as soon as it was brought into the case. Neither we, nor the trial court, nor Hogg himself can say wheth-

plaint should not have been allowed was not an abuse of discretion. Nor did federal procedural law bar the district court from reconsidering its earlier order allowing amendment when it ruled on the motion for judgment notwithstanding the verdict. As the same result would obtain under federal relation back law, Eagle must prevail on its limitations defense. We need not consider, therefore, whether the evidence supports the verdict on the merits. The judgment of the district court in Pessotti's appeal, No. 90–2182, is *affirmed*. As affirmance of the judgment in No. 90–2182 moots Eagle's appeal in No. 90–2183, that appeal is *dismissed*. Costs are awarded to Eagle against Pessotti in No. 90–2182; both parties shall bear their own costs in No. 90–2183.

er this is true. We are satisfied that the possibility that Sergeant Hogg's changed testimony prejudiced Eagle is sufficient to support the district court's finding of prejudice. Indeed, a specific finding of prejudice is only necessary on the assumption that Massachusetts law requires such a finding, and Pessotti's argument points out the problems inherent in this requirement. If anything, Pessotti's argument provides a strong reason to believe that a specific finding of prejudice could not feasibly be required by Massachusetts law.